IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

MISSOULA DIVISION

_____

CHRISTOPHER LEE OSTERLOTH,      )      Cause No. CV 06-152-M-JCL
                                )
          Plaintiff,            )
                                )
     vs.                        )      FINDINGS AND RECOMMENDATION
                                )      OF U.S. MAGISTRATE JUDGE
SHERIFF HUGH HOPWOOD;           )
UNDERSHERIFF MIKE JOHNSON;      )
OFFICER KEITH MILES,            )
                                )
          Defendants.           )
_____

     On September 27, 2006, Plaintiff Christopher Osterloth moved

to proceed in forma pauperis with this action under 42 U.S.C. §

1983.  The motion was granted in a separate Order.  Osterloth is a

federal prisoner proceeding pro se.[1]

## I. Assessment of Filing Fee

     The Complaint in this case was submitted by three plaintiffs,

with three separate motions to proceed in forma pauperis.

Osterloth, Jeremiah Savage, and Doug Raymos each signed the

Complaint.  The Court opened three separate actions, one for each

_____

     [1]  Osterloth's signature page says that he can be contacted
through his attorney.  However, his attorney has not appeared for
him in this action.

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 1

Plaintiff.[2]   It is appropriate to explain the reasons for that decision and to give Plaintiff Osterloth an opportunity to object to the procedure.  This Order follows the path charted by United States Magistrate Judge Carolyn Ostby in *Swenson v. MacDonald*, No. CV 05-93-GF-SEH-CSO (D. Mont. Jan. 30, 2006).

As a general rule, to initiate an action, a plaintiff must submit either the full filing fee or a motion to proceed in forma pauperis.  *See* 28 U.S.C. § 1914(a); 28 U.S.C. § 1915(a)(1).  The few courts that have expressly considered the matter agree that prisoner-plaintiffs who proceed together in one action must each pay the full filing fee.  Otherwise, an important objective of the Prison Litigation Reform Act of 1996 – to impose a financial check on an inmate's decision to conduct litigation – would be undermined.  *See, e.g., Boriboune v. Berge*, 391 F.3d 852, 854-56 (7th Cir. 2004); *Hubbard v. Haley*, 262 F.3d 1194, 1196-98 (11th Cir. 2001).  So far as this Court is aware, those are the only two appellate cases that discuss the issue.[3]

---

[2]  *See Savage v. Hopwood*, No. CV 06-153-M-JCL (D. Mont. filed Sept. 27, 2006); *Raymos v. Hopwood*, No. CV 06-154-M-JCL (D. Mont. filed Sept. 27, 2006).

[3]  A Sixth Circuit case assumes, without discussing the issue, that the filing fee may be shared among multiple prisoner-plaintiffs.  *See Talley-Bey v. Knebl*, 168 F.3d 884, 887 (6th Cir. 1999) (Boyce, Ch. J.) ("Because each prisoner chose to prosecute the case, we hold that each prisoner should be proportionately liable for any fees or costs that may be assessed.").  What *Talley-Bey* actually decided was whether two plaintiffs who were compelled to pay the defendants' costs in the amount of $41.00 should be

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 2

Although *Boriboune* and *Hubbard* agree that each prisoner-plaintiff must pay the full amount of the filing fee, the courts disagree as to whether it is permissible for multiple plaintiffs to join their claims together in one action or whether each plaintiff must pursue a separate action. *Boriboune* holds that multiple prisoner-plaintiffs may proceed together under the permissive joinder rule, Fed. R. Civ. P. 20. *Boriboune*, 391 F.3d at 856. As the district court pointed out on remand in *Boriboune*, this holding does not address 28 U.S.C. § 1915(b)(3), which provides that "[i]n no event shall the filing fee collected exceed the amount of fees permitted by statute for the commencement of a civil action." *Boriboune v. Berge*, 2005 WL 147400, at *2, No. 04-C-0015-C (W.D. Wis. 2005). If multiple prisoner-plaintiffs proceed together in one action and each pays the full filing fee, the amount of the fees collected in that action will exceed the amount permitted by

---

jointly liable for the amount. Assessing a defendant's costs against two plaintiffs is different than assessing a filing fee; a defendant is not entitled to recapture double or treble his costs just because there were two or three plaintiffs. *Talley-Bey*, then, still does not address the filing fee issue. In 1997, the Chief Judge of the Sixth Circuit – the same judge who wrote the opinion in *Talley-Bey* – issued an administrative order directing that each prisoner joining in a civil action should be proportionally liable for fees and costs "[b]ecause each prisoner chose to join in the prosecution of the case." *See In re Prison Litigation Reform Act*, 105 F.3d 1131, 1137-38 (6th Cir. 1997) (administrative order issued "until such time as panels of this court have the opportunity to address the numerous issues raised by the Act"). Of course, the same reasoning – that each plaintiff chose to prosecute the case – can be used to support imposition of the full filing fee on each plaintiff.

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 3

statute for the commencement of a civil action.

   *Hubbard*, by contrast, reasons that Rule 20 "actually conflicts" with the PLRA's requirement that prisoner-plaintiffs must pay the full filing fee. There, the court concluded that, in the context of prisoner cases, the latter-enacted statute, 28 U.S.C. § 1915(b)(1), repeals the earlier-enacted rule. Consequently, the Eleventh Circuit precluded multiple prisoner-plaintiffs from proceeding under Rule 20. *See Hubbard*, 262 F.3d at 1198.

   This Court believes that *Hubbard* presents the stronger argument. Again, both *Boriboune* and *Hubbard* agree that each prisoner-plaintiff must pay the full amount of the filing fee, lest the fee provisions of the PLRA be frustrated. However, *Boriboune's* reliance on Rule 20 is not persuasive. Rule 20 is a permissive rule – plaintiffs *may* join their claims in one action – while the financial scheme of the PLRA is mandatory in nature. Prisoner-plaintiffs *must* pay the full filing fee, even if they are granted leave to proceed in forma pauperis, but each prisoner-plaintiff in a multiple-plaintiff action cannot be made to do so without running afoul of § 1915(b)(3)'s imperative that the amount of the fee collected must not exceed the fee imposed for "commencement of a civil action."

   *Hubbard's* severance solution, on the other hand, is consistent with 28 U.S.C. § 1915(b)(1) and (3). If each plaintiff is required

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 4

to pursue his or her case alone, the amount of the fees collected in each action will never exceed the amount permitted by statute for the commencement of a civil action.

Additionally, the court respectfully concludes that some of the reasoning in *Boriboune* is inapposite.   In the course of addressing the district court's concerns about joint litigation among inmates,[4] *Boriboune* summarizes the working of an incentive structure by which Fed. R. Civ. P. 11(b) and the three-strikes provision of 28 U.S.C. § 1915(g) might persuade inmates not to proceed jointly:

> A prisoner litigating on his own behalf takes the risk that one or more of his claims may be deemed sanctionable under Fed. R. Civ. P. 11, or may count toward the limit of three weak forma pauperis claims allowed by § 1915(g). A prisoner litigating jointly under Rule 20 takes those risks for all claims in the complaint, whether or not they concern him personally.   Sharing works both ways; detriments as well as costs are parceled out among plaintiffs.    Rule  11  requires    all   unrepresented

---

[4]    One of the district court's primary concerns was that unscrupulous "jailhouse lawyers" might exploit other prisoners by attempting to act on their behalf.  The circuit court reasoned that such a concern exists whether prisoner-plaintiffs proceed jointly or not. *See Boriboune*, 391 F.3d at 854.

However, some prisons, including several in Montana, strictly limit or prohibit inmate-to-inmate legal assistance, for the very purpose of disarming unscrupulous "jailhouse lawyers."   If the federal court insists that inmates be permitted to proceed jointly, it must also insist that they be permitted to exchange pleadings and motions.   If one inmate is moved during the course of the litigation, the court may find itself in the position of ordering prison officials to allow co-plaintiff inmates to correspond with each other, in derogation of a facially valid and legitimate prison policy. *Cf.* DOC Policy No. 5.4.1 ¶ V.B(2); *Turner v. Safley*, 482 U.S. 78, 91-93 (1987).

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 5

plaintiffs to sign the complaint, and the signature
conveys all of the representations specified by Rule
11(b) for the entire complaint.   Likewise § 1915(g)
limits to three the number of IFP complaints or appeals
that were "dismissed on the grounds that it is frivolous,
malicious, or fails to state a claim upon which relief
may be granted".   This language refers to the complaint
or appeal as a whole; thus when any claim in a complaint
or appeal is "frivolous, malicious, or fails to state a
claim upon which relief may be granted", all plaintiffs
incur strikes.   Many prisoners may think that the risks
of joint litigation under Rule 11 and § 1915(g) exceed
the gains of sharing the filing fee.   One could imagine
situations in which joined claims lack overlap, and in
which it would be inappropriate to attribute Plaintiff
A's claim to Plaintiff B for the purpose of "strikes";
but then joinder may be impermissible under Rule 20
itself, or severance appropriate.   When claims are
related enough to be handled together, they are related
enough for purposes of § 1915(g) as well.

*Boriboune*, 391 F.3d at 854-55.

First, the court's observation that § 1915(g) applies to "the

complaint ... as a whole" conflicts with its assertion that "when

any *claim* in a complaint or appeal is 'frivolous, malicious, or

fails to state a claim upon which relief may be granted', all

plaintiffs incur strikes." *Id.* (emphasis added).  The statute does

not impose strikes on a per-claim basis but on a per-case basis.

*See* 28 U.S.C. § 1915(g) (requiring district court to impose a

strike when an "action" is frivolous, malicious, or fails to state

a claim).  Consequently, if all pro se prisoner-plaintiffs in joint

litigation are deemed to act as one, as *Boriboune* assumes, Rule 20

actually limits a frivolous claimant's exposure under § 1915(g) if

his claims are joined with others that may be meritorious.  A pro

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 6

se prisoner-plaintiff litigating alone receives a strike if he earns it; the same plaintiff litigating jointly might avoid a strike because someone else did not earn it.

Second, the *Boriboune* court opines that each pro se prisoner-plaintiff would be bound by Rule 11 with respect to each pleading or document as a whole, not just with respect to those allegations or matters that concern him or her personally.  Yet a pro se litigant has no authority to make assertions on behalf of anyone else; only an attorney may do that.  To suggest that a pro se prisoner-plaintiff can be penalized under Rule 11 for, say, inaccurate factual statements made by another prisoner-plaintiff is to suggest that each plaintiff acts for the others in some way.

A Rule 11 sanction would be inappropriate if assessed against a pro se prisoner-plaintiff who could conduct a reasonable investigation into the truth of a co-plaintiff's allegation only by asking the co-plaintiff what happened.  That, of course, will usually be the case, because prisoners do not have unencumbered opportunities to question witnesses, who are most frequently officers or staff with considerable authority over the investigating plaintiff.  Such a scenario may arise even where joinder is proper.  In *Hubbard*, for instance, the plaintiffs were dialysis patients who alleged that their medical care and diet at St. Clair Correctional Facility was inadequate and violated the Eighth Amendment.  It is proper to join such claims under Rule 20,

but it would be unduly harsh to sanction one prisoner if another prisoner inaccurately claims to have been deprived of treatment for a certain period of time.  Rule 11(c) imposes an obligation on the trial court to determine who is responsible for violating the rule. It does not permit a court to impose a blanket sanction without evidence to support it.

Third, *Boriboune* does not consider the practical difficulties of joint litigation among plaintiffs who have no guarantee that they will all remain at the same prison or in the same area of a prison while they are litigating together.   Prison officials inspect inmate correspondence for security reasons; co-plaintiffs' papers intended for filing in court are no exception.  Fed. R. Civ. P. 5 would require each pro se prisoner-plaintiff in a multiple-plaintiff case to serve every other pro se prisoner-plaintiff with every document filed.  *See Boriboune*, 2005 WL 147400 at *2.  Even before a defendant appears, in this case with three plaintiffs, that would mean that the contents of six envelopes would have to be inspected by prison staff before they could be mailed to each plaintiff's co-plaintiffs.  Three additional envelopes addressed to the court, for a total of nine, would have to be processed through the prison mail system, every time a document is filed.  Even if all three plaintiffs sign one document – which triggers the problems referred to in the preceding two paragraphs – that document must be circulated among them for signing.  And neither

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 8

the Court nor any litigant has any way of knowing whether the second or third plaintiff to sign the document altered it in some way, perhaps by adding language that amounts to harassment, *see* Fed. R. Civ. P. 11(b)(1), until it is served on each plaintiff at the same time it is served on the Court.

None of these problems arise under *Hubbard's* approach. *Hubbard* forecloses pro se prisoner-plaintiffs from an opportunity available to other civil litigants under Fed. R. Civ. P. 20, but it does so in a way that effectuates the filing fee and three-strikes provisions of 28 U.S.C. § 1915, as well as avoiding all appearance of impropriety in terms of one pro se plaintiff acting for others. Especially in view of *Boriboune's* and *Hubbard's* agreement that each plaintiff must pay the filing fee, pro se prisoner-plaintiffs appear to suffer no disadvantages if they are not permitted to proceed jointly under Rule 20.  Those pro se prisoner-plaintiffs who act in good faith or who bring potentially meritorious claims are not penalized.  Any benefit prisoner-plaintiffs may enjoy in proceeding as co-plaintiffs in an action are not thwarted by requiring them to proceed in separate actions.  Nothing would prevent the three plaintiffs in this case from coordinating their litigation and proceeding simultaneously and in parallel fashion, to the extent their institutional placement permits them to do so. Also, the Court could order the consolidation of cases, under appropriate circumstances, to make discovery and trial more

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 9

efficient for the litigants.   Further, prisoner-plaintiffs are
protected from the Rule 11 sanctions that may, under *Boriboune's*
reasoning, be invited by others.   Also, if they are not required to
serve multiple other plaintiffs in the same action, they save on
postage and copying – considerable expenses for most prisoners –
and probably experience less delay in resolution of their claims.

For all these reasons, the Court will not permit Osterloth,
Savage, and Raymos to proceed under Fed. R. Civ. P. 20 in this
action.   Each must pursue his own action.

## II. Preliminary Screening

Pursuant to the federal statutes governing proceedings *in
forma pauperis* and proceedings by prisoners, federal courts must
engage in a preliminary screening of cases to assess the merits of
the claims.   28 U.S.C. §§ 1915(e)(2), 1915A(a); 42 U.S.C. §
1997e(c)(1); *Lopez v. Smith*, 203 F.3d 1122, 1126 (9th Cir. 2000)
(en banc).   The court must identify cognizable claims, or dismiss
the complaint, or any portion of the complaint, if the complaint is
frivolous, malicious, or fails to state a claim upon which relief
can be granted, or if the complaint seeks monetary relief from a
defendant who is immune from such relief.   28 U.S.C. §§ 1915(e)(2),
1915A(b); 42 U.S.C. § 1997e(c)(1).

Although the statute requires a dismissal for the reasons
stated, it does not deprive the district court of its discretion to
grant or deny leave to amend.   *Lopez*, 203 F.3d at 1127.   The court

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 10

can decline to grant leave to amend if "it determines that the pleading could not possibly be cured by the allegation of other facts." *Id*. (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)). Leave to amend is liberally granted to pro se litigants unless it is "absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987) (citing *Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980)). Additionally, the courts must liberally construe pro se pleadings. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

## III. Osterloth's Allegations

Osterloth contends, first, that his Eighth Amendment right against cruel and unusual punishment was violated when he was sexually assaulted by Defendant Miles at the Mineral County Jail.

The "sexual assault" consisted of a search for contraband. The search was conducted after an inmate, Yuen, was observed knocking plastic baggies down from a ceiling grate in an outdoor recreational area, taking them out of officers' sight, and then returning to the grate. The search was conducted of all inmates who were in the recreation yard at the time. *See* Compl. Ex. 1 and 1. Osterloth says:

> On Sept. 3, 2006 at approxamatley 4:00 pm. Detention Officer Kieth Miles accompanied by Under Sherriff Mike Johnson performed pat searches of six inmates in the Mineral County Detention Facility of which I Christopher Osterloth was one of the inmates being pat searched.

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 11

> Officer Miles after pat searching my upper body first
> pulled my pants out in the front and the back to see if
> I had anything in my underwear.  After this Officer Miles
> then reached between my legs and grabbed my scrotum +
> penis after this he slid his hand up the crack between my
> buttocks.  He then finished the search by continuing down
> my legs.  Officer Miles performed this exact search on
> five other inmates, In witch he groped the other inmates
> Genitals and slid his hand up between their buttocks as
> he did to me.  When Officer Miles had completed my search
> I commented that "that was pretty much sexual assault"
> and Officer Miles commented "Yah pretty much."

Compl. (doc. 1) Ex. 7 at 1.   The officers found nothing on

Osterloth.  Another inmate, Jeremiah Savage, who was the first to

be searched, had 2 packets of tobacco wrapped around his penis with

a hairtie.  Compl. Ex. 1 at 1.  A third inmate, Yuen, was found

with tobacco in his hand.  Osterloth and two other inmates were

charged with disruptive conduct and sanctioned by seven days'

lockdown.

Osterloth contends that "the sexual contact was excessive and

constituted sexual assault."  Compl. at 9.  He accuses Officer

Miles of the assault, Undersheriff Johnson of supervising it and

not stopping it, and Sheriff Hopwood of failing to properly train

his officers and failing to promulgate a reasonable policy

governing strip searches.  Id. at 6, 11.

Second, Osterloth claims that his Fourteenth Amendment right

to due process is violated by the absence of a formal grievance

procedure at the Jail.  He alleges that Sheriff Hopwood and

Undersheriff Johnson are responsible for developing a grievance

policy and responding (or failing to respond) to inmates' grievances.  *Id.* at 11-12.

Third, Osterloth contends that "[t]he infractions were determined without any hearing at which prisoners could attend, be notified of charges against them, or have opportunity to speak in their own defense."  *Id.* at 8.

For his relief, Osterloth seeks "any relief [he is] entitled to by law."  *Id.* at 14.

**IV. Analysis**

The Court has carefully considered whether Osterloth's Complaint contains the kinds of deficiencies that could be cured by amendment.  Because Osterloth would have to allege different facts, not just additional ones, in order to state a claim on which relief might be granted, amendment would be futile.

**A. Body Search**

**1. Eighth Amendment**

Osterloth claims that Officer Miles' search violated the Eighth Amendment's prohibition against cruel and unusual punishment.[5]  The Eighth Amendment protects inmates against the

---

[5]  It is possible that the Eighth Amendment does not apply in Osterloth's case because he had not been sentenced at the time of the incident, though he pled guilty in this Court on June 20, 2006, to methamphetamine-related offenses.  *See United States v. Osterloth*, No. CR 06-10-H-DWM (D. Mont. filed Apr. 25, 2006).  However, Osterloth makes his claim under the Eighth Amendment, so it is considered here.

"unnecessary and wanton infliction of pain."  *Jordan v. Gardner*, 986 F.2d 1521, 1525 (9th Cir. 1993) (en banc) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)).  "Momentary discomfort" does not constitute infliction of pain.  *Id*. at 1526.

While Osterloth contends that Officer Miles' actions caused him and the other five inmates to suffer "acute homophobia, fear of reprisals, anxiety, and loss of sleep," the Court does not find that the conduct of which he complains was objectively sufficiently serious to violate the United States Constitution.  *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).

Nor was the search, which was conducted on specific inmates after contraband had been found in their proximity, "excessive, vindictive, harassing, or unrelated to any legitimate penological interest."  *Michenfelder v. Sumner*, 860 F.2d 328, 332 (9th Cir. 1988).

No Eighth Amendment violation has been found in other situations that were more serious than Osterloth's.  *See, e.g.*, *Somers v. Thurman*, 109 F.3d 614, 622-24 (9th Cir. 1997) (holding that female guards may perform visual body cavity searches on male inmates and watch male inmates shower, despite inmates' allegation that guards pointed, joked, and "gawked" at them); *Grummett v. Rushen*, 779 F.2d 491, 492 (9th Cir. 1985) (finding that prison's

policy allowing female guards to observe male inmates disrobing, showering, using the toilet, and being strip-searched, as well as allowing them to conduct pat-down searches including the groin area did not violate the Fourth or the Eighth Amendment); *compare Jordan*, 986 F.2d at 1522 & n.1 (holding that Eighth Amendment prohibited clothed body searches of female prisoners by male guards directed by policy to "rub," "squeeze," and "knead" prisoners' crotch and breast areas, where policy was implemented on random, nonemergency, suspicionless basis). Given the seriousness of these other situations as compared to Osterloth's, it is clear that he cannot state a claim under the Eighth Amendment.

### 2. Fourth Amendment

Although Osterloth does not claim a Fourth Amendment violation, the Court must liberally construe pro se pleadings, and any claim involving a search implicates the Fourth Amendment.

Reasonableness is the crucible of a Fourth Amendment claim. As the Supreme Court said in *Bell v. Wolfish*, 441 U.S. 520 (1979):

> The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 15

*Id.* at 559.[6]

Here, it was plainly reasonable for the officers to conduct the search and reasonable for them to believe it was necessary to check each inmate's genital area.   Contraband had already been found around the ceiling grate and inside the jail.   In Osterloth's case, the officers' reason to search the inmates' genital areas was further supported by the fact that inmate Savage, who was searched first, actually had contraband tied around his penis.   The intrusion was limited in scope to a patdown, as opposed to a cavity search.   While the officers did not see Osterloth with contraband or hear him say that he had it, they knew that he was in the right place at the right time and they knew that he was in the company of Yuen, who was observed with contraband.   Given their responsibility to keep contraband out of the jail, it was reasonable for them to search Osterloth as well as Yuen.   The search at issue here was plainly appropriate.

### 3. Other Claims

Because Officer Miles' search did not violate Osterloth's constitutional rights, he has not suffered an injury that could be compensated by damages, and he cannot establish an injury

---

[6]   *Bell* involved pretrial detainees.   As noted above, Osterloth had pled guilty at the time of the incident in question. For Fourth Amendment purposes, the Court believes this is a distinction without difference.   At any rate, *Bell* could only provide Osterloth with greater protection than he is entitled to, so he suffers no prejudice under application of its standard.

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 16

sufficient to confer standing to pursue equitable relief against Johnson or Hopwood. *See, e.g.*, *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983) (distinguishing between standing to seek damages and standing to obtain injunctive relief); *Quintanilla v. City of Downey*, 84 F.3d 353, 355 (9th Cir. 1996) (reasoning that, where plaintiff fails to show constitutional violation, associated claims for failure to train or supervise also fail).

All claims arising from the search should be dismissed with prejudice.

### B. Grievance Procedure

Although prisoners have a right to petition the government for redress of grievances, *see* U.S. Const. Amend. I, "[t]here is no legitimate claim of entitlement to a grievance procedure." *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988) (citing *Shango v. Jurich*, 681 F.2d 1091, 1100 (7th Cir. 1982), and *Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982)). Osterloth does not claim that he was prevented from voicing his grievances. While he claims that he feared "reprisal" from Officer Miles because he did not receive a response from either Johnson or Hopwood, *see* Compl. at 15, he alleges no facts that make such a fear seem a reasonable or realistic inference from the lack of a response. The Court can only conclude that he suffered no legally cognizable injury as a result of the fact that prison officials did not respond to his

complaints.  This claim should be dismissed with prejudice.

### C. Lockdown

Because Osterloth had already pled guilty at the time of the September 3 incident,[7] he was not entitled to a hearing before he could be placed on lockdown status for seven days.  *See Resnick v. Hayes*, 213 F.3d 443, 447-48 (9th Cir. 2000) (applying *Sandin v. Conner*, 515 U.S. 472, 484 (1995)).  Seven days on lockdown status does not impose an "atypical and significant hardship ... in relation to the ordinary incidents of prison life."  *Sandin*, 515 U.S. at 484.  As a result, an inmate who has pled guilty is not entitled to due process before he may be subjected to a seven-day lockdown.  *Resnick*, 213 F.3d at 447-48.


Based on the foregoing, the Court enters the following:

### RECOMMENDATION

Osterloth's Complaint (doc. 1) should be DISMISSED WITH PREJUDICE for failure to state a claim on which relief may be granted and the docket should reflect that his filing of this action counts as one strike against him, pursuant to 28 U.S.C. § 1915(g).

The Clerk of Court shall serve a copy of the Findings and Recommendation of the United States Magistrate Judge upon the

---

[7] *See* Minute Entry, *United States v. Osterloth*, No. CR 06-10-H-DWM (D. Mont. filed June 20, 2006).

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 18

Plaintiff.  Plaintiff is advised that, pursuant to 28 U.S.C. § 636, any objections to these findings must be filed or delivered to prison authorities for mailing within twenty (20) calendar days[8] after the entry date reflected on the Notice of Electronic Filing, or objection is waived.

Plaintiff must immediately inform the Court of any change in his mailing address.

DATED this  11th  day of October, 2006.


/s/ Jeremiah C. Lynch
Jeremiah C. Lynch
United States Magistrate Judge

---

[8] In prisoner cases, this Court extends the time to object to twenty days in order to take into account the Supreme Court's ruling in *Houston v. Lack*, 487 U.S. 266, 270-71 (1988), and the somewhat greater mailing time that is involved in sending documents into and out of a prison facility.

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 19